**In re Benson WEINSTOCK and Fern Weinstock, Debtors.**

**Mark SPIER, Individually and as promoter of Bernhard & Spier, P.C. and Larry Bernhard, Individually and as promoter of Bernhard & Spier, P.C., Plaintiffs,**

v.

**Benson WEINSTOCK, Defendant.**

**Bankruptcy No. 88–21881T.
Adv. No. 89–0424.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 28, 1994.

David S. Sellman, Baltimore, MD, for plaintiffs.

George Luskus, Jenkintown, PA, for defendant.

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Before the court is a complaint objecting to the dischargeability of a debt allegedly[1] owed by defendant to plaintiffs under 11 U.S.C. § 523(a)(2)(A). This alleged debt arose from plaintiffs' purchase of a part-time podiatry practice from defendant. Specifically, plaintiffs claim they sustained approximately $30,000.00 in damages as a result of misrepresentations made by defendant during the parties' negotiations concerning the number of patients defendant treated in his part-time practice and the income generated by his part-time practice. Plaintiffs further maintain that the damages they allegedly sustained should be found nondischargeable under § 523(a)(2)(A) because they resulted from actions they took in reliance upon these misrepresentations. Because we have determined that plaintiffs have not met their burden of proof, we find the alleged debt dischargeable and enter judgment in favor of defendant. We begin our analysis with a summary of the relevant facts.

Defendant is a podiatrist who sold his part-time podiatry practice in Lansdowne, Maryland ("Lansdowne") to plaintiffs in December of 1987. At the time he opened his part-time practice in Lansdowne in March of 1986, and during the time he operated his part-time Lansdowne practice, defendant was also employed part-time by United Footcare Centers ("United Footcare"). United Footcare had two offices located in the Baltimore area. Specifically, United Footcare had an office in Randallstown, Maryland, which was approximately fifteen to twenty miles from Lansdowne, and an office in Parkville, Maryland, which was approximately forty miles from Lansdowne. Defendant had been employed by United Footcare from the summer of 1983 until approximately July of 1987, at which time he decided to end his relationship with United Footcare and sell his part-time practice in Lansdowne to relocate. To facilitate

---

**1.** We describe the underlying debt as alleged because defendant denies the existence of the debt and neither the existence nor the amount of the debt has ever been determined by a court. As the matter before us is a complaint objecting to the dischargeability of the alleged debt under 11 U.S.C. § 523(a)(2)(A), the only issue presently before us is whether the alleged debt is nondischargeable under this section.

the sale of his practice, defendant placed advertisements in various podiatry journals. Plaintiffs learned about the sale of defendant's practice through one of these advertisements. Plaintiffs then contacted defendant in November of 1987 to discuss the possibility of purchasing defendant's part-time practice.

Only one of the plaintiffs, Dr. Bernhard, met with defendant during the first meeting which was held at defendant's office in Lansdowne. During this meeting, defendant showed Dr. Bernhard all of the records which were in his office at that time. These included patient ledger cards, day sheets and an appointment book. Defendant also showed Dr. Bernhard a financial statement which reflected that defendant's gross revenue from his part-time Lansdowne practice from January of 1987 through September of 1987 was approximately $47,000.00. Dr. Bernhard testified that defendant advised him that he saw between sixty and seventy patients a month at the Lansdowne office and that approximately one-half of these patients were new patients. Dr. Bernhard further testified that he was aware that defendant was affiliated with another podiatry practice at the time defendant operated his part-time practice in the Lansdowne office. Defendant testified that the parties did not discuss many of the details during the first meeting and that Dr. Bernhard seemed eager to purchase the Lansdowne practice.

Shortly thereafter, defendant met with plaintiff, Dr. Spier, at the Lansdowne office to discuss the potential purchase. During this meeting, Dr. Spier reviewed the records which were maintained by defendant, including the patient ledger cards, patient charts, day sheets and the appointment book defendant maintained for his Lansdowne practice. Dr. Spier also examined the equipment which was in the Lansdowne office. Dr. Spier testified that he discussed the "logistics" of the practice with defendant, i.e., what defendant spent on rent, phone bills and the equipment lease. Dr. Spier further testified that defendant advised him that he saw between sixty and seventy patients a month at the Lansdowne office, with fifteen to twenty of these patients being new patients, and that all of the income reflected on the day sheets and ledger cards was generated at the Lansdowne office. Finally, Dr. Spier testified that during the parties' negotiations, he was aware that defendant was affiliated with another podiatry practice at the time defendant operated his part-time practice in Lansdowne. Defendant testified that neither plaintiff requested additional information from him and that both plaintiffs seemed convinced that they wanted to purchase the Lansdowne practice.

Thereafter, in December of 1987, plaintiffs and defendant executed an agreement under which plaintiffs agreed to purchase defendant's part-time Lansdowne practice (and the equipment in the Lansdowne office) for $10,000.00. In addition, plaintiffs agreed to assume defendant's liability under an equipment lease. Plaintiffs then opened a part-time podiatry practice in the Lansdowne office. However, plaintiffs were disappointed with the income they were generating from the operation of their Lansdowne office. Specifically, plaintiffs testified that despite extensive advertising, they averaged only between five and eight appointments a week. Accordingly, plaintiffs closed their Lansdowne office in May of 1988, after operating their practice for only approximately five months. Thereafter, plaintiffs received notice of defendant's bankruptcy filing, and they then filed this complaint objecting, under § 523(a)(2)(A), to the dischargeability of the debt they believe defendant owes them. We now turn to an analysis of § 523(a)(2)(A).

We begin by noting that exceptions to discharge are narrowly construed against the creditor and in favor of the debtor. *Lipka v. Donley (In re Donley)*, 115 B.R. 502, 503 (Bankr.E.D.Pa.1990); *Koltman v. Hammill (In re Hammill)*, 61 B.R. 555, 556 (Bankr.E.D.Pa.1986); *Seiders v. Fenninger (In re Fenninger)*, 49 B.R. 307, 310 (Bankr. E.D.Pa.1985). This is in keeping with the fresh start concept underlying the Bankruptcy Code. In addition, the burden of proof in a dischargeability dispute is on the party objecting to the dischargeability of the debt who must prove his case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Turning to the specific dischargeability exception relied upon by plaintiffs in this case, we note that in order for a debt to be found nondischargeable under 11 U.S.C. § 523(a)(2)(A), the plaintiff must prove each of the following elements by a preponderance of the evidence: *(1)* that the defendant made a materially false representation; *(2)* knowing that it was false; *(3)* with the intent and purpose of deceiving the plaintiff; *(4)* that the plaintiff reasonably relied upon the representation; and *(5)* sustained damage as a proximate result of the representation having been made. *Donley,* 115 B.R. at 503; *Hammill,* 61 B.R. at 556; *Volk of Philadelphia, Inc. v. Gelfand (In re Gelfand),* 47 B.R. 876, 879 (Bankr.E.D.Pa.1985). Having analyzed the facts presented in the case before us in conjunction with the legal standard which must be met by plaintiffs in order for them to prevail on their complaint objecting to the dischargeability of this alleged debt, we conclude that plaintiffs have not met their burden of proving any of the § 523(a)(2)(A) elements. We first address the requirement that plaintiffs prove that defendant made a materially false representation with intent to deceive plaintiffs.

Plaintiffs assert that defendant misrepresented the number of patients he saw at the Lansdowne office and that he included income he received from United Footcare patients in his estimate of the gross revenue he earned from the Lansdowne practice. While plaintiffs introduced some evidence that defendant included earnings he received from making housecalls to patients in the Randallstown and Parkville areas in his estimate of the gross revenue generated by his Lansdowne practice, the amount of income generated from these housecalls is disputed and appears to us to be insignificant. Plaintiffs also complain that a review of the records maintained by defendant reveals that defendant reported receiving income from some procedures allegedly performed in the Lansdowne office which could not have been performed there because the equipment necessary to perform these procedures was not present in the Lansdowne office. Once again, however, plaintiffs failed to establish the amount of income which is attributable to these procedures. Hence, it is difficult to determine whether the representation concerning these procedures was material. Furthermore, defendant introduced into evidence a list of his patients' zip codes. A review of this list reveals that a substantial number of defendant's patients resided in the Lansdowne area. Hence, after reviewing the evidence presented, we are not satisfied that plaintiffs established by a preponderance of the evidence that defendant made a material misrepresentation concerning the number of patients he treated at the Lansdowne office and the amount of income he generated from the operation of his Lansdowne practice.

In addition, we find that the evidence presented by plaintiffs does not establish that defendant made any of the representations with intent to deceive plaintiffs. To the contrary, the evidence established that defendant met with plaintiffs on several occasions before the purchase agreement was finalized, that defendant permitted plaintiffs to inspect all of the records which he maintained for his Lansdowne office and that defendant fully cooperated with plaintiffs' attempts to gather information concerning defendant's Lansdowne practice. Moreover, defendant testified that the majority of his patients were young people who came to see him for procedures which did not necessitate additional appointments. Additionally, defendant saw many of his patients during evening hours in his Lansdowne office, while plaintiffs' maintained mostly morning and some afternoon hours at their Lansdowne office. Hence, the facts that defendant's patient base was composed of mostly young people who did not require follow up appointments and that defendant saw many of his Lansdowne patients in the evening, while plaintiffs maintained mostly morning and some afternoon hours when they operated their Lansdowne practice, could explain why plaintiffs were not able to generate the amount of income that they expected to generate from the operation of their part-time Lansdowne practice.

Even if we were to conclude that defendant made some misrepresentations concerning his Lansdowne practice, we find that these misrepresentations would not result in the debt being found nondischargeable under § 523(a)(2)(A) because plaintiffs failed to es-

tablish that they reasonably relied upon the representations made by defendant. As stated earlier, plaintiffs met with defendant on several occasions in the Lansdowne office and had full access to defendant's records and office equipment. Plaintiffs also were given ample opportunity to inspect these records and the equipment in the office before they decided to purchase defendant's part-time practice. Defendant testified that plaintiffs were anxious to purchase his part-time practice and did not ask him many questions about the details of his practice. Hence, the possibility remains that a more thorough review of defendant's records and a more thorough examination of defendant concerning the details of his Lansdowne practice would have revealed that many of defendant's patients were young people who were being treated for problems which did not require follow up appointments. This coupled with the fact that plaintiffs did not maintain the same office hours which defendant maintained leads us to conclude that plaintiffs' expectation that a majority of defendant's patients would become part of their practice was unreasonable, especially since plaintiffs were aware that the area was already heavily saturated with podiatrists and that defendant was affiliated with United Footcare during the time that defendant operated his part-time Lansdowne practice. Given these facts, we conclude that plaintiffs should have more closely examined defendant's records and office equipment and should have more thoroughly examined defendant about the nature of his part-time practice before making their decision to purchase the practice from defendant. Accordingly, we find that plaintiffs' reliance upon defendant's representations without a more thorough examination of the records, office equipment and the details of defendant's practice was not reasonable.

Finally, we note that our review of the evidence presented leads us to question whether the harm which plaintiffs suffered was caused by their reliance upon representations made by defendant during the parties' negotiations. To the contrary, we believe that plaintiffs' loss could more readily be attributable to the fact that a substantial portion of what they were purchasing was patient goodwill, an item which can not be guaranteed to transfer from the practice of one doctor to that of another, especially when many of the patients seen by the doctor who is selling the practice do not require follow up treatment and the two practices do not maintain similar office hours. For all of these reasons, we find that plaintiffs have not met their burden of proving the elements necessary to find this alleged debt nondischargeable under § 523(a)(2)(A).

An order entering judgment in favor of defendant and finding the alleged debt in issue dischargeable follows.

### ORDER

AND NOW, this 28th day of September, 1994, it is ORDERED that JUDGMENT on the complaint is ENTERED in favor of DEFENDANT and the debt alleged to be owed by defendant to plaintiffs is dischargeable.